**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Goddard Systems, Inc.

                         v.

Hina Gondal and
Bilal Gondal and
BHSG & Co.

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (✗)

| May 3?.2017 | _Constantin_ 7 E— | Goddard Systems, Inc. |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215 988 8311 | 215 988 8344 | cfournaris@wiggin.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JS 44   (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Goddard Systems, Inc.

**DEFENDANTS**
Hina Gondal and Bilal Gondal and BHSG & Co.

**(b)** County of Residence of First Listed Plaintiff   Montgomery County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   New Castle County, DE
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Constantine T. Fournaris, Wiggin and Dana, LLP, 50 S. 16th Street, Two Liberty Place, Suite 2925, Philadelphia, PA  19102; 215 988 8311

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
        Plaintiff

☒ 3   Federal Question
        *(U.S. Government Not a Party)*

☐ 2   U.S. Government
        Defendant

☐ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☒ 840 Trademark | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
        Proceeding

☐ 2   Removed from
        State Court

☐ 3   Remanded from
        Appellate Court

☐ 4   Reinstated or
        Reopened

☐ 5   Transferred from
        Another District
        *(specify)*

☐ 6   Multidistrict
        Litigation -
        Transfer

☐ 8   Multidistrict
        Litigation -
        Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1331 and 15 U.S.C. § 1116(a)

Brief description of cause:
Enforcement of Franchise Agreement; Trademark Infringement and Unfair Competition

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $ injunctive
relief and money
damages

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   May 3, 2017

SIGNATURE OF ATTORNEY OF RECORD   Constantine T Fournaris

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Goddard Systems, Inc., 1016 W. Ninth Avenue, King of Prussia, PA 19406

Address of Defendant: 849 Bullen Drive, Middletown, DE 19709

Place of Accident, Incident or Transaction: 1016 W. Ninth Avenue; King of Prussia, PA 19406
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐  No☒

Does this case involve multidistrict litigation possibilities?     Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?     Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) Lanham Act - trademark

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Constantine T. Fournaris, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: May 3, 2017     _____     63902
                       Attorney-at-Law                Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5.3.17     _____     63902
                  Attorney-at-Law               Attorney I.D.#

CIV. 609 (5/2012)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**GODDARD SYSTEMS, INC.**
1016 W. Ninth Avenue
King of Prussia, Pennsylvania 19406

      Plaintiff

  v.

**HINA GONDAL**
849 Bullen Drive
Middletown, DE  19709

and

**BILAL GONDAL**
849 Bullen Drive
Middletown, DE  19709

and

**BHSG & CO**.
849 Bullen Drive
Middletown, DE  19709

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**CIVIL ACTION NO.**

**JURY TRIAL NOT DEMANDED**

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

### THE PARTIES

1.    Plaintiff Goddard Systems, Inc. ("GSI") is a Pennsylvania corporation with its principal place of business at 1016 West Ninth Avenue, King of Prussia, Pennsylvania 19406.

2.    Upon information and belief, Defendant Hina Gondal is an adult individual and a resident of the State of Delaware with a home address of 849 Bullen Drive, Middletown, Delaware 19709.

3.     Upon information and belief, Defendant Bilal Gondal is an adult individual and a resident of the State of Delaware, with a home address of 849 Bullen Drive, Middletown, Delaware 19709.

4.     Defendant BHSG & Co. ("BHSG") is a Delaware corporation with a registered agent address of 849 Bullen Drive Middletown, Delaware 19709. Upon information and belief, BHSG was formed by, and is owned and/or controlled by Hina Gondal and/or Bilal Gondal. Bilal Gondal is BHSG's registered agent.

5.     As set forth below, BHSG, Bilal Gondal and Hina Gondal formerly owned and operated a franchised THE GODDARD SCHOOL® preschool located at 100 Patriot Drive, Middletown, Delaware 19709 under a written franchise agreement with GSI.

6.     BHSG, Bilal Gondal and Hina Gondal are collectively referred to in this Complaint as "Defendants". Bilal Gondal and Hina Gondal are sometimes collectively referred to in this Complaint as the "Gondals".

7.     Upon information and belief, BHSG, Bilal Gondal and Hina Gondal have recently established and opened a knock-off, so-called independent "The Gem School" child daycare or preschool learning center or business at the exact same address as their now former Goddard School ("The Gem School"), all in express contravention and breach of Defendants' contractual obligations and covenants to GSI.

8.     Upon information and belief, prior to May 1, 2017 and while Defendants BHSG and Hina Gondal were still Goddard School franchisees and, in the instance of Bilal Gondal, the other Defendants' unconditional guarantor, Defendants directly were involved in and assisted in the establishment and creation of The Gem School.

9. Upon information and belief, prior to May 1, 2017 and while Defendants BHSG and Hina Gondal were still Goddard School franchisees and Bilal Gondal was the other Defendants' full guarantor, Defendants hired, or facilitated or arranged the hiring of their former Goddard School employees as employees at The Gem School.

10. Upon information and belief, one or more of Defendants own, control or have an interest in, in whole or in part, directly or indirectly, The Gem School. In the alternative, and upon information and belief, one or more Defendants, directly or indirectly, own, maintain, engage in, are employed by, finance and/or otherwise have an interest in The Gem School.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are residents of different states, and the amount in controversy (including, without limitation, the value of the rights at issue and being litigated herein) exceeds $75,000, exclusive of interest and costs.

12. This Court also has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1116(a) because Defendants have engaged and are engaging in activities that infringe Plaintiff's trademarks under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §1114(1), § 1125(a).

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants' conduct injured GSI in this judicial district. Among other things, Defendants' acts of misappropriation and conversion of things belonging to, unfair competition with GSI and other intentional torts as described below, as a matter of law, have their fictional situs and have caused damage in this district, and were directed at GSI in this district.

14.    Jurisdiction and venue are also proper in this Court under the terms of: (a) the Franchise Agreement dated July 11, 2007 for the School franchise located in Middleton, Delaware (*see* Exhibit 1, ¶23B); (b) the Addendum as defined below (*see* Exhibit 2 ¶ 7); (c) the Assignment as defined below (*see* Exhibit 3 ¶ 7); the Guaranty as defined below (*see* Exhibit 4 ¶ 7); and (e) the Conditional Reinstatement of Franchise Agreement as defined below (*see* Exhibit 9, ¶14).

## BACKGROUND

15.    GSI is the franchisor of THE GODDARD SCHOOL® businesses ("Goddard Schools"), which specialize in offering to the public preschool early education programs for children.

16.    Through years of experience, GSI has developed an operating system consisting of (among other things) specially designed standards and specifications, business information, curricula, advertising and marketing materials, identification schemes, training programs, management programs, interior and exterior accessories, and GSI-approved equipment and equipment layouts (the "Goddard System").

17.    GSI is the owner of all of the right, title and interest in and to certain trade names, trademarks and service marks, including the mark THE GODDARD SCHOOL® and other related marks (the "Marks"), which are utilized in the operation of the Goddard System. GSI owns numerous registrations for the mark THE GODDARD SCHOOL®, and related marks. Each of these registrations has been properly registered by GSI on the Principal Register in the United States Patent and Trademark Office and is in full force and effect.

18.    The registered Marks are famous and have acquired secondary meaning in that they are widely recognized by the general consuming public of the United States as a designation of source of the goods or services of GSI and its licensed franchisees.

19.     The mark THE GODDARD SCHOOL® and the other Marks are utilized in interstate commerce.

20.     As part of the Goddard System, GSI has developed proprietary know-how, trade secrets and unique and successful methods of early childhood education, and has developed a unique, uniform system relating to the operation of franchised Goddard Schools. Distinguishing characteristics of the franchised Goddard Schools include the Marks and the latest available data and information concerning market analysis, procurement of students, sales and merchandising methods, training of franchisees and center personnel, advertising techniques, record-keeping and business management.

21.     The Goddard System also includes a system of maintaining uniform high standards of quality, appearance and service in each of the Goddard Schools, an operations manual containing standards, specifications and procedures for operating a Goddard School, training and instruction in the operation of the franchise, reasonable individual business advice provided by the officers and other personnel of GSI, and assistance in promoting a franchised Goddard School business.

22.     Maintenance of the highest standards of quality, appearance and service is essential to the development and maintenance of the reputation and goodwill of THE GODDARD SCHOOL® preschools. These standards are important to GSI and to each franchisee.

23.     The goodwill and reputation associated with the Marks are impaired when a franchisee fails to maintain standards and operates a non-conforming or unsafe business under THE GODDARD SCHOOL® trademarks and service marks.

24.     GSI and its franchisees have for many years spent substantial sums of money promoting THE GODDARD SCHOOL® preschools. As a result of this extensive promotion,

valuable goodwill has been developed for the Marks and for THE GODDARD SCHOOL® preschools, products and services that bear the Marks and thus identify GSI as their sponsor and source.

25.    The business relationship between GSI and its franchisees is governed by the terms and conditions of a franchise agreement between GSI and each franchisee.

26.    GSI franchisees are licensed under their respective franchise agreements to use the Marks and to operate under the Goddard System.

27.    GSI and its franchisees have for many years spent substantial sums of money promoting the Goddard Schools. As a result of this extensive promotion, valuable goodwill has been developed for the Marks and for the schools, products and services that bear the Marks and thus identify GSI as their sponsor and source.

28.    Most new Goddard School franchisees, including Defendants, have no prior experience in operating a child daycare or preschool learning center and would have little or no ability to do so efficiently, legally, and profitably without extensive training and assistance. This program is a critical factor driving entrepreneurs to become Goddard School franchisees rather than trying to open independent centers on their own.

29.    GSI provides its franchisees with extensive training and hands-on assistance and support in every aspect of establishing and operating a child daycare and preschool learning center, including selecting an appropriate location for the center, opening and promoting a center, learning theories of early childhood development and curricula for different age groups, increasing and maintaining enrollment, managing accounting functions, and ordering and purchasing equipment and supplies.

30.     Each individual franchisee is given two to three weeks of training before his or her Goddard School opens.  Before and after the Goddard School has opened, and throughout the franchisees' relationship with GSI, GSI personnel provide additional training and support, both in person and by telephone.  GSI also provides its franchisees with its Confidential Operating Manual and other materials, all of which contain GSI's trade secrets and confidential and proprietary information (collectively, the "Manual").  GSI personnel conduct periodic visits to and inspections of each Goddard School, during which they offer guidance and advice to help franchisees resolve operational and other problems.  GSI's franchise relations staff is available by telephone to answer franchisees' questions and provide additional support and advice.  GSI also sponsors seminars, conventions and regional meetings for its franchisees, during which GSI's trade secrets and confidential and proprietary information are disseminated and discussed.

31.     As partial consideration for GSI's agreement to disclose the Goddard System, all franchisees agree not to be involved in any way in any other child daycare, preschool learning center, or similar business anywhere during the term of their franchise agreement ("in-term covenant") and for a three-year period after the termination of their franchise agreement, at or within a ten-mile radius of their Goddard School or any other existing or proposed Goddard School ("post-term covenant").

32.     The in-term and post-term covenants – which are present in every franchise agreement that GSI has ever entered – are essential to maintaining the integrity of GSI's trade secrets and confidential and proprietary information and to protecting other franchisees from unfair competition from former franchisees.

## THE FRANCHISE AGREEMENT

33.     On July 11, 2007, Bilal Gondal entered into a Franchise Agreement (the "Franchise Agreement") with GSI, under which Bilal Gondal was granted the right and undertook the obligation to operate THE GODDARD SCHOOL® at 100 Patriot Drive, Middletown, Delaware 19709 (the "School").  *See* Franchise Agreement (which is attached as **Exhibit 1** and incorporated herein by this reference).

34.     By Addendum to Franchise Agreement, Assignment and Assumption Agreement, Collateral Assignment of Lease and Mutual Release dated December 17, 2010, Hina Gondal was added to the Franchise Agreement as a franchisee (the "Addendum").  *See* Addendum (which is attached as **Exhibit 2** and incorporated herein by this reference).  The Franchise Agreement as amended by the Addendum are collectively referred to hereinafter as the "Franchise Agreement".

35.     On July 16, 2013, Hina and Bilal Gondal assigned their rights and obligations under the Franchise Agreement to BHSG, a Delaware corporation formed for their convenience of ownership and BHSG assumed all of the obligations under the Franchise Agreement (the "Assignment").  Under the Assignment, Hina and Bilal Gondal agreed to continue to be bound by the Franchise Agreement and to personally guarantee all of BHSG's obligations under the Franchise Agreement.  *See* Assignment (which is attached as **Exhibit 3** and incorporated herein by this reference).

36.     On January 29, 2016, all of Bilal Gondal's interests in BHSG were transferred to Hina Gondal, who upon information and belief presently owns all of the shares of BHSG.

37.     Contemporaneously with the transfer of Bilal Gondal's interest in BHSG, and at Franchisees' request, Bilal Gondal was removed from the Franchise Agreement and instead executed a Continuing Guaranty and Agreement to be Bound by Franchise Agreement ("the

Guaranty"). Pursuant to the Guaranty, dated January 29, 2016, Bilal Gondal agreed to continue to be bound by the Franchise Agreement and to personally guarantee BHSG's and Hina Gondal's full performance of all their duties and obligations under the Franchise Agreement. *See* the Guaranty (which is attached as **Exhibit 4** and incorporated herein by this reference).

38.     The initial term of the Franchise Agreement commenced on the date of the Franchise Agreement (July 11, 2007) and was set to last for an initial term of 15 years (until July 10, 2022).

39.     Under the terms of the Franchise Agreement and the Assignment, Hina Gondal and BHSG possessed a limited license to use the Marks and Goddard System, to utilize GSI's latest available data and information concerning early childhood education, and to employ the unique system of operation developed and owned by GSI.

40.     Under the Franchise Agreement, Hina Gondal's and BHSG's rights to use the Marks is personal and limited and they have and derive no interest in any goodwill established under the Marks. Paragraph 7 of the Franchise Agreement (Ex. 1) provides in relevant part:

> (a)     Your right to use the Proprietary Marks is derived solely from this Agreement and is ***limited to the conduct of the business by [Franchisee]*** pursuant to and in compliance with this Agreement. You agree that all usage of the Proprietary Marks ***and any goodwill established thereby shall inure to our exclusive benefit***. You acknowledge that this Agreement does not confer any goodwill or other interest in the Proprietary Marks to you. (Paragraph 7.A (emphasis added)).

> (b)     You agree that after termination or expiration of this Agreement, you will not directly or indirectly at any time or in any manner identify yourself as a current or former franchisee of our System or any business as a current or former The Goddard School or as otherwise associated with [GSI] or our affiliated companies, or use in any manner or for any purpose the Proprietary Marks or any colorable imitation thereof. (Paragraph 7.B)

(c) You shall promptly notify [GSI] of any use by any person or legal entity other than you, [GSI] or another of [GSI's] franchisees of any Proprietary Marks, any colorable variation thereof, or any other mark in which [GSI] [has] or claim[s] a proprietary interest. (Paragraph 7.D)

41. The Franchise Agreement also contains limitations on Hina Gondal's and BHSG's ability to transfer the Franchise Agreement, the right to operate the School or its assets. Paragraph 12.B of the Franchise Agreement provides in relevant part: "You understand and acknowledge that the rights and duties set forth in the Agreement are personal to you. Accordingly, you shall not sell, assign, transfer, convey, give away, pledge, mortgage or otherwise encumber any interest in this franchise (including any interest in any partnership, corporation or limited liability company that owns this franchise) or in the assets of the franchise without our prior written consent. Any purported assignment or transfer, by operation of law or otherwise, not having our written consent shall be null and void and shall constitute a material breach of this Agreement." Franchise Agreement (Ex. 1), ¶12.B.

42. Under the terms of the Guaranty, Bilal Gondal expressly agreed that in the enforcement of any rights against any of the Defendants, GSI could proceed against him as if Bilal Gondal were the primary obligor under the Franchise Agreement.

43. Under the Franchise Agreement and Guaranty, Defendants agreed to operate the School in accordance with the methods, standards and specifications provided by GSI in the Manual. Defendants further agreed that the Manual was at all times the property of GSI. *See* Franchise Agreement (Ex. 1), ¶8.

44. Before signing the Franchise Agreement, the Gondals and BHSG had no training or experience in opening, operating or promoting a child daycare or preschool learning program;

everything that the Gondals and BHSG know on these subjects they learned from GSI or through their experience of operating the School with GSI's support.

45.     As the designated on-site operator for the School, Bill Gondal and Hina Gondal attended GSI's two-week franchisee training class at GSI's headquarters in King of Prussia, Pennsylvania in June 2007 and August 2010 respectively, and Franchisees' employee-Director of the former Goddard School (and, upon information and belief, a Director of The Gem School) Jessica Ciocci attended GSI's one-week Directors' training class in February 2017. While at training, Bill Gondal received a copy of the Manual and signed a Receipt of Confidential Operating Manual (which is attached as **Exhibit 5** and incorporated herein by this reference).

46.     Defendants expressly acknowledged and agreed in the Franchise Agreement and Guaranty, respectively, that the information contained in the Manual is secret and confidential and agreed that they "shall use all reasonable efforts to maintain such information as secret and confidential" and would neither reproduce the materials in the Manual or "make the same available to any unauthorized person." *See* Franchise Agreement, (Ex. 1), at ¶8 and 9 and Guaranty at ¶3. The Franchise Agreement specifically provided as follows:

> The Manual, our trade secrets and any copyrighted material, our methods and other techniques and know-how are our exclusive property and are revealed to you in confidence solely to assist you in operating the School. You [the Gondals and BHSG] shall at all times treat the [Confidential Operating] Manual, any other manuals created for or approved for use in the operation of the School, and the information contained in the manuals as confidential, and shall use all reasonable efforts to maintain the information as secret and confidential. You shall not at any time, without [GSI's] written consent, copy, duplicate, record or otherwise reproduce the foregoing materials, in whole or in part, or otherwise make the same available to any unauthorized person.

Franchise Agreement at ¶ 9A.

47.    Under the Franchise Agreement and Guaranty, the Gondals and BHSG agreed,

among other things, not to disclose GSI's trade secrets and confidential and proprietary

information (the "Covenant of Confidentiality"):

> You [the Gondals and BHSG] shall not, during the term of this Agreement or
> thereafter, communicate, divulge, or use for the benefit of any other person,
> persons, partnership, association or corporation, any material in which we claim
> copyright protection, any trade secrets or confidential information, knowledge, or
> know-how concerning the methods of operation of a School which may be
> communicated or disclosed to you, or of which you may be apprised, by virtue of
> your operation under the terms of this Agreement.

Franchise Agreement (Ex. 1) at ¶ 9.B.

48.    Pursuant to the Franchise Agreement and the Guaranty, Defendants further agreed

to the following covenant not to compete during the term of the Franchise Agreement (the "In-

Term Covenant"):

> You [the Gondals and BHSG] covenant that, during the term of this
> Agreement, except as otherwise approved in writing by us, you shall
> not directly or indirectly, for yourself, or through, on behalf of, or in
> conjunction with any person, persons, partnership, corporation or other
> entity:
>
> (1) Divert or attempt to divert any business or customer of the
> business franchised under this Agreement to any competitor, by
> direct or indirect inducement or otherwise, to do or perform,
> directly or indirectly, any other act injurious or prejudicial to the
> goodwill associated with the Proprietary Marks and the System.
>
> (2) Employ or seek to employ any person who is at that time
> employed by [GSI] or by any of [GSI's] franchisees, or otherwise
> directly or indirectly to induce such person to leave his or her
> employment.
>
> (3) Own, maintain, engage in, be employed by, finance or have any
> interest in any other child daycare or preschool learning center or
> business.

Franchise Agreement (Ex. 1) at ¶ 16B; Guaranty ¶3.

49. The Franchise Agreement provides that GSI was entitled to terminate the Franchise Agreement immediately if Defendants:

     a)    abandon or cease to do business at the School, lose [their] right to possession of the School, or otherwise forfeit the right to do or transact business in the jurisdiction where the School is located, *see* Franchise Agreement (Ex. 1), ¶ 13.A(2);

     b)    engage in conduct which, in [GSI's] judgment, has affected or may affect the goodwill of the Proprietary Marks, *see* Franchise Agreement (Ex. 1), ¶ 13.A(3);

     c)    purport to transfer any rights or obligations under this Agreement to any third party without GSI's prior written consent, contrary to the terms of Section 12 of this Agreement, *see* Franchise Agreement (Ex. 1), ¶ 13.A(4); and/or

     d)    fail to comply with the covenants contained in Section 16 of this Agreement, *see* Franchise Agreement (Ex. 1), ¶ 13.A(5).

50. Pursuant to the Franchise Agreement and Guaranty, Defendants also agreed that, for a three-year period after termination of the Franchise Agreement, they would not, "either directly or indirectly, for [themselves] or through, on behalf of, or in conjunction with any other person, persons, partnership, corporation or other entity":

     (1)    divert or attempt to divert any business or customer of the business franchised under this Agreement to any competitor, by direct or indirect inducement or otherwise, to do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System;

     (2)    employ or seek to employ any person who is at that time employed by [GSI] or by any of [GSI's] franchisees, or otherwise directly or indirectly to induce such person to leave his or her employment;

     (3)    own, maintain, engage in, be employed by, finance or have any interest in any other child daycare or preschool learning center or business at the premises of the School or within a radius of ten (10) miles of the School or any existing or proposed School.

Franchise Agreement (Ex. 1) at ¶ 16(C) (the "Post-Term Covenant"); Guaranty (Ex. 4) at ¶3.

51.    Upon termination or expiration of the Franchise Agreement, GSI also has the right under the Franchise Agreement to purchase the assets of the School from Hina Gondal and BHSG at fair market value, exclusive of any goodwill, and to obtain an assignment of Defendants' lease for the premises of the School. *See* Franchise Agreement (Ex. 1) at ¶15.

52.    Defendants also agreed that, in any action brought to enforce or defend GSI's rights under the Franchise Agreement, GSI is entitled to recover, in addition to any other recovery, reasonable attorneys' fees, court costs and expenses of litigation. *See* Franchise Agreement (Ex. 1), ¶23E and Guaranty (Ex. 4), ¶6.

## DEFENDANTS BREACH THE FRANCHISE AGREEMENT AND GUARANTY

53.    Notwithstanding Defendants' promises to GSI under the Franchise Agreement, Assignment, the Conditional Reinstatement, and the Guaranty, Defendants failed to comply with their obligations under the Franchise Agreement, including their obligation to comply with GSI's standards.

54.    As a result, on June 21, 2016, GSI sent Defendants a Notice of Default (the "June 21, 2016 Notice") for failure to comply with four (4) consecutive GSI Quality Assurance standards assessments, which were conducted by GSI on November 20, 2014, May 21, 2015, October 8, 2015 and June 10, 2016 respectively.    As set forth in the June 21, 2016 Notice, GSI was particularly concerned that Defendants' Quality Assurance scores continued to decrease with each Quality Assurance review and the Quality Assurance score on June 10, 2016 was just 51.1%. Defendants were provided 30 days from the date of the June 21, 2016 Notice to cure their defaults by bringing the School into compliance with GSI's Quality Assurance standards. *See* the June 21, 2016 Notice (which is attached as **Exhibit 6** and incorporated herein by this reference).

55.    On September 26, 2016, GSI conducted another Quality Assurance review of the School, which resulted in another Quality Assurance failure, including a poor Health and Safety score of just 66.7%, well below a passing score of 85%. Accordingly, Defendants failed to cure the defaults identified in the June 21, 2016 Notice.

56.    As a result of Defendants' failure to cure the defaults and continuing failure to comply with GSI's Quality Assurance standards, GSI elected to terminate the Franchise Agreement by Notice of Termination of Franchise Agreement dated October 10, 2016 (the "First Termination Notice"). In the First Termination Notice, GSI notified Defendants that the Franchise Agreement was terminated due to repeated failures by Defendants to bring the School into compliance with GSI's Quality Assurance standards. *See* the First Termination Notice which is attached as **Exhibit 7** and incorporated herein by this reference. In the First Termination Notice, GSI also set forth and demanded compliance with Defendants' post-termination obligations under the Franchise Agreement.

57.    On or about October 28, 2016, GSI and Defendants entered into a Listing Agreement regarding the marketing for resale and prospective disposition of the Middletown Goddard School (the "Listing Agreement"). In the Listing Agreement, Defendants covenanted and agreed, among other things, not to transfer, sell or otherwise dispose of School or its assets without obtaining GSI's approval of the terms of the sale and the buyer, as well as not to negotiate the sale or close on any sale of the School without conditioning that the buyer would operate the Middletown Goddard School only as a The Goddard School preschool under a franchise agreement with GSI following the closing on the sale of the School. *See* Listing Agreement, which is attached as **Exhibit 8** hereto and incorporated herein by this reference.

58.     At the request of and as an accommodation to Defendants, and in reliance upon Defendants' representations of strict compliance with the terms of the Franchise Agreement, the Guaranty, and the existence of the Listing Agreement, GSI agreed to conditionally reinstate the Franchise Agreement for a limited period of time, as such time period may be extended by GSI, in its sole business judgment, for the purpose of allowing Defendants to transfer their business to an unrelated, non-competitor, third party approved by GSI.  As a result, on or about November 16, 2016, GSI and Defendants entered into a Conditional Reinstatement of Franchise Agreement (the "Conditional Reinstatement).  The Conditional Reinstatement is attached hereto as **Exhibit 9** and is incorporated herein by this reference.

59.     While the Conditional Reinstatement provided that the reinstatement term would extend through February 28, 2016, it further provided that: (a) the Conditional Reinstatement could be extended by GSI in its sole business judgment; (b) if the business was not transferred within the stated reinstatement period, then Defendants were obligated to fully cooperate with GSI to effectuate an orderly closure of the School on a date to be directed by GSI; and (c) the Franchise Agreement's term would be considered terminated on the last day of the School's operation.  Under the Conditional Reinstatement an orderly closure, includes, but is not limited to, providing GSI communications to parents, operating the School until the closure date identified by GSI, and paying all amounts due under the Franchise Agreement.

60.     GSI believes and therefore avers that the franchise relationship between the parties continued thereafter on a month-to-month basis on the same terms and conditions as existed previously and as set forth in the Franchise Agreement.  Indeed, from and after February 28, 2017, and in furtherance of its efforts to resolve this matter amicably, GSI did, among other things, the following:  (a) permitted Defendants to continue to use The Goddard School's trademarks, (b)

permitted the Defendants to continue to operate the School, (c) provided Quality Assurance and other visits and telephone support to Defendants, and (d) continued to negotiate to find an amicable resolution between the parties, including the sale of the location to a permitted third-party acceptable to GSI.

61.     On or about April 4, 2017, GSI sent Defendants a second, proposed conditional reinstatement agreement for review and execution (the "Second Conditional Reinstatement").

62.     On or about April 10, 2017, Defendants paid the required royalties and advertising contribution due and owing to GSI for the month of March 2017.

63.     Despite continuing to receive the benefit of the use of GSI's trademarks and the revenues associated with operating the School, Defendants failed to execute and return the Second Conditional Reinstatement.

64.     The Franchise Agreement, the Assignment, the Guaranty, the Listing Agreement and the Conditional Reinstatement, and Defendants' duties and obligations thereunder as described above, remained in full force and effect during the course of Defendants' unlawful conduct as described below.

## DEFENDANTS' UNLAWFUL CONDUCT

65.     Defendants have participated in a scheme (the "Scheme") to breach, violate and otherwise frustrate and circumvent Defendants' obligations under the Franchise Agreement, Guaranty, Conditional Reinstatement and the Listing Agreement, and to engage in acts injurious and prejudicial to GSI while simultaneously and directly advantageous and beneficial to Defendants, namely to, directly or indirectly, abandon and close the School and simultaneously establish, develop and operate a prohibited competing, so-called independent child daycare or preschool learning center concept and related business at the exact same location as the School.

66.     On information and belief, Defendants have orchestrated and carried out a prohibited sale or transfer of the School or some or all of its assets to a third party not approved by GSI in order to establish and operate the competing, so-called The Gem School at the exact same location as the former School location; all while the Franchise Agreement, the Guaranty, the Conditional Reinstatement and the Listing Agreement were still valid and in effect, all in violation of the in-term covenants (and, thereafter, post-term covenants) under the Franchise Agreement. Defendants' actions have resulted in a competing child daycare or preschool learning center or business operating at the exact location of the former School – The Gem School — utilizing personnel formerly employed by Defendants in connection with the former School, as well as the prohibited and transfer and use of GSI's goodwill, confidential standards, know-how and methods in the operation of that competing School, all causing GSI irreparable harm.

67.     Upon information and belief, during the term of the Franchise Agreement (and thereafter during the School's recent transition), one or more of the Defendants solicited and diverted families enrolled as GODDARD SCHOOL® families to attend their purported, so-called new independent school, solicited employees regarding employment and captured and diverted GSI's goodwill under the Franchise Agreement. It is further believed and therefore alleged that Defendants have used, are using and/or intended to use the School's telephone number, which is GSI's property and associated with GSI's proprietary marks, in connection with the purported, so-called new independent school.

68.     By letter from their counsel dated April 28, 2017 (which was delivered by electronic mail from Defendants to GSI on Saturday, April 29, 2017 and by Fedex on Monday, May 1, 2017) (the "April 28, 2017 letter"), Defendants notified GSI that they had abandoned the franchise, they would cease operations as a Goddard School as of April 28, 2017 and the property

(which, upon information and belief, one or more of the Defendants own and control directly or indirectly) would be leased to another entity. A copy of the April 28, 2017 letter and Defendants' transmitting email is attached hereto as **Exhibit 10** and incorporated herein by this reference.

69.     On further information and belief, before April 29, 2017 and while continuing to operate as a Goddard School vis-à-vis GSI and the consuming public, the competing The Gem School and/or Defendants applied for and received from the State of Delaware Office of Child Care Licensing either a new license or name change of the license issued previously to Defendants for the operation of the Goddard School. As of at least April 28, 2017, the State of Delaware Office of Child Care Licensing's records reflected that the registered trade name of the then-licensed day care facility located at 100 Patriot Drive, Middletown, Delaware 19709 was The Gem School, not THE GODDARD SCHOOL®. Copies of the State of Delaware Office of Child Care Licensing's records as of April 28, 2017 and May 1, 2017 are attached hereto respectively as **Exhibits 11** and **12** and incorporated herein by this reference.

70.     On further information and belief, before April 29, 2017 and while continuing to operate as a Goddard School, Defendants altered or changed the insurance coverages and insurers for the School and, in so doing, sought quotes for, applied for and obtained insurance for the new, so-called independent The Gem School.

71.     Defendants' conduct as described above violated their in-term covenants under the Franchise Agreement not to, directly or indirectly, (i) divert or attempt to divert any business or customer of the School to any competitor, (ii) employ or seek to employ any person who is at that time employed by GSI or by any other franchisee of GSI or otherwise directly or indirectly induce such person to leave his or her employment, or (iii) own, maintain, engage in, be employed by, finance, or have any interest in any other child daycare or preschool learning center or business

19

(other than a Goddard School under an effective Franchise Agreement with GSI), all of which constituted breaches of their covenants under Paragraph 16.B. of the Franchise Agreement.

72.     Defendants' actions, omissions and failures to abide by lawful contractual obligations and instructions vis-à-vis GSI regarding transfer, closure and licensing issues also constitute a failure to comply with all laws under the Franchise Agreement, the Conditional Reinstatement, the Guaranty and the Listing Agreement, and engaging in conduct which, in the judgment of GSI, has affected or may affect the goodwill of GSI's proprietary marks.

73.     On May 1, 2017, the competing school - The Gem School - commenced operations and opened for business and, upon information and belief, was and remains staffed by the School's employees who had worked at Defendants' The Goddard School.

74.     By Notice of Termination of Franchise Agreement dated May 1, 2017 (the "Second Termination Notice"), and in recognition of Defendants' April 28, 2017 letter and conduct, GSI terminated the Franchise Agreement pursuant to Paragraphs 13.A.(2), (3), (4) and (5) of the Franchise Agreement, effective immediately upon delivery of the Notice to Defendants based on Defendants' abandonment and cessation of business at the School, engagement in conduct which had affected or may affect the goodwill of GSI's Marks, engagement in a prohibited transfer as defined in the Franchise Agreement and failure to comply with the in-term covenants in the Franchise Agreement, as well as Defendants' repeated breaches of the Franchise Agreement, the Assignment and the Guaranty.  A true and correct copy of the Second Termination Notice is attached as **Exhibit 13** and incorporated herein by this reference.

75.     Upon information and belief, Defendants' involvement with the competing The Gem School has and will continue to entail the use and disclosure of the Goddard System's confidential and proprietary information, trade secrets, knowledge and know-how that Defendants

learned from GSI, all of which Defendants remain in possession of, including the Manual. As a practical matter, Defendants have no ability to be involved in the operation of the competing The Gem School at the exact location as the School without using elements of the Goddard System, and thereby disclosing and using in an unauthorized way GSI's trade secrets and other confidential and proprietary information, in violation of the Covenant of Confidentiality, the In-Term and Post-Term Covenant under the Franchise Agreement, the Guaranty, the Conditional Reinstatement, the Uniform Trade Secrets Act and the common law.

76.     Upon information and belief, one or more of the Defendants has represented to parents of the children enrolled in the School and to third-party suppliers and vendors (including actual and prospective insurers and brokers) that nothing would change at the School upon its closure and conversion to the new, so-called independent The Gem School.

77.     Upon information and belief, some or all of the Defendants have already begun and continue to market and promote The Gem School's and Defendants' former association and experience with the Goddard System and association with the Goddard Schools in connection with the competing The Gem School, which is a deliberate attempt to trade on their experience gained and the public's perception of them as present or former Goddard School franchisees and otherwise constitutes a breach of the Franchise Agreement and the Guaranty. Upon information and belief, Defendants have transported and continue to currently transport students through the use of a school bus branded with GSI's registered trademarks, which will lead to inevitable confusion regarding the source and sponsorship of such trademarks.

78.     Upon information and belief, Defendants are attempting to avoid paying GSI initial franchise fees and on-going royalty fees which would be required if Defendants continued as or transferred to a third-party to establish a new Goddard School franchise instead of a competing

The Gem School, and to divert such income and profits from GSI. Viewed over the typical fifteen (15) year Goddard School Franchise Agreement, GSI is being damaged by, and could lose millions of dollars because of, Defendants' breaches and actionable misconduct.

79.     GSI has fully performed or otherwise properly discharged all of its contractual duties to Defendants.

41.     Pursuant to the terms and conditions of the Franchise Agreement, the Conditional Reinstatement, the Assignment, the Guaranty and the Listing Agreement, Defendants are jointly and severally liable to GSI.

42.     Defendants and the competing The Gem School's complained-of conduct as set forth in this Complaint continues to occur as of the date of this Complaint.

## COUNT I

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### (Against All Defendants)

43.     GSI incorporates the allegations contained in the preceding paragraphs as if fully set forth in this paragraph.

44.     As of May 1, 2017, Defendants do not have GSI's permission to use the Marks.

45.     On information and belief, Defendants have used and displayed and intend to continue to use and display GSI's trademarks and trade names in connection with the unauthorized competing The Gem School located at 100 Patriot Drive, Middletown, Delaware 19709, including, without limitation, branded bus vehicles, publicly displayed license information, and electronic and print advertising suggesting that the competing The Gem School is and/or was an authorized Goddard School and its owners and/or operators are or were authorized GSI franchisees and/or were in some way sponsored by or affiliated with GSI.

46.     Alternatively, and in addition, should the Court determine as Defendants have preliminarily contended to GSI in their April 28, 2017 letter that the Franchise Agreement and Conditional Reinstatement expired as of February 28, 2017, then Defendants used, displayed and traded off of GSI's trademarks and trade names in connection with the formerly franchised The Goddard School located at 100 Patriot Drive, Middletown, Delaware 19709 from February 28, 2017 through April 28, 2017 (including, without limitation, on signage, vehicles, publicly displayed licenses, and electronic and print advertising) suggesting that the competing the School is and/or was an authorized Goddard School and its owners and/or operators are or were authorized GSI franchisees and/or were in some way sponsored by or affiliated with GSI, all without license or right to do so.

47.     The Defendants' use of GSI's trademarks and trade names in connection with a preschool early learning center without license did and is likely to continue to cause confusion in the minds of consumers, who believed and will continue to believe that Defendants' school is or was related to or authorized by GSI.

48.     On information and belief, Defendants have traded or intend to intentionally trade on GSI's trademarks, trade name and confidential business system and to deliberately misappropriate GSI's goodwill for their own benefit.

49.     Defendants' operation and involvement in an early learning center using GSI's trademarks and operating system has or will deprive GSI of revenues and profits.  GSI has no adequate remedy at law because it cannot be adequately compensated for the deprivation and dilution of the consumer recognition and goodwill built up under the GSI trademarks, trade name and business system over many years.

50.     Defendants' conduct, which unfairly suggested and suggests an affiliation between their preschool early learning center and GSI, constitutes an infringement of GSI's trademarks under 15 U.S.C. §§ 1114(1)(a) and (b) and a false designation of origin or a false description or representation which tends falsely to describe or represent the services and goods of Defendants as those of GSI, and constitutes unfair competition violating 15 U.S.C. § 1125(a).

51.     Defendants' conduct was and, until ceased, will remain willful.

52.     Defendants' operation as set forth above has caused and, unless abated, will continue to cause GSI irreparable injury in that GSI will have difficulty refranchising Defendants' trading area; business will be diverted from GSI's authorized franchisees; the goodwill related to GSI's trademarks, trade name and business system will be diluted and taken from GSI's control; and GSI will lose profits and revenues which, because of Defendants' conduct, cannot be readily calculated.

53.     GSI's immediate and irreparable harm will continue unless and until Defendants are enjoined from committing these wrongful acts.

54.     Without an injunction ordering Defendants to cease to use or display any of GSI's trademarks or service marks, or any other logos, symbols or trade dress of GSI, or any confusingly similar trademarks, service marks, logos, symbols or trade dress, in connection with the advertising, distribution, display or sale of any product or service, GSI will continue to suffer irreparable harm and damage to its business.

# COUNT II

## BREACH OF CONTRACT – POST-TERM COVENANT NOT TO COMPETE UNDER THE FRANCHISE AGREEMENT
### (Against All Defendants)

55.     GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

56.     After abandoning the Franchise Agreement and Conditional Reinstatement, Defendants breached their obligations under the Franchise Agreement, the Guaranty, and Conditional Reinstatement, by, directly or indirectly, (a) diverting or attempting to divert any business or customer of the School to any competitor, (b) employing or seeking to employ employees of the School at the competing The Gem School, (c) doing or performing acts injurious or prejudicial to the goodwill associated with the Marks and Goddard System, and (d) owning, maintaining, engaging in, being employed by, financing, or having any interest in any child care or preschool learning center or similar business.

57.     Defendants' conduct as set forth above has caused and will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees. The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

58.     GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships, and lost profits cannot be compensated in monetary damages.

59.     Defendants are contractually obligated to pay all costs and expenses, including reasonable attorneys' fees, incurred by GSI in enforcing the Franchise Agreement, the Guaranty, the Conditional Reinstatement, and the Assignment, and any other agreements with Defendants.

## COUNT III

### BREACH OF CONTRACT – IN-TERM COVENANT NOT TO COMPETE UNDER THE FRANCHISE AGREEMENT
**(Against All Defendants)**

60.     GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

61.     During the term of the Franchise Agreement and pursuant to the Guaranty, Defendants breached their obligations under the Franchise Agreement and Guaranty by, directly or indirectly, (a) diverting or attempting to divert any business or customer of the School to any competitor, (b) employing or seeking to employ employees of the School at the competing The Gem School, (c) doing or performing acts injurious or prejudicial to the goodwill associated with the Marks and Goddard System, and (d) owning, maintaining, engaging in, being employed by, financing, or having any interest in any child care or preschool learning center or similar business.

62.     Defendants' conduct as set forth above has caused and will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees. The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

63.     GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships, and lost profits cannot be compensated in monetary damages.

64. In the alternative, Defendants have breached and have caused and are liable for damages to GSI under the Franchise Agreement, the Guaranty and the Conditional Reinstatement in an amount to be ascertained at trial.

65. Defendants are contractually obligated to pay all costs and expenses, including reasonable attorneys' fees, incurred by GSI in enforcing the Franchise Agreement, the Guaranty and the Conditional Reinstatement, and any other agreements with Defendants.

## COUNT IV

## BREACH OF CONTRACT – COVENANT OF CONFIDENTIALITY
### (Against All Defendants)

66. GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

67. Defendants' conduct as set forth above breached their obligation under the Franchise Agreement and the Guaranty during its term not to "communicate, divulge, or use for the benefit of any other person, persons, partnership, association or corporation, any trade secrets or confidential information, knowledge, or know-how concerning the methods of operation of The Goddard School."

68. As detailed above, upon information and belief, Defendants breached the Franchise Agreement and Guaranty by, among other things, permitting the competing The Gem School to have access to, to use and/or to benefit from GSI's confidential operating system and information without authorization. *See* Franchise Agreement (Ex. 1), ¶9B.

69. As a direct result of Defendants' conduct, GSI has suffered irreparable harm to its business interests and, in the alternative, damages as a result of Defendants' breach of the Covenant of Confidentiality, in an amount to be determined at trial.

70.     Defendants' conduct as set forth above has caused and will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees. The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

71.     GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships, and lost profits cannot be compensated in monetary damages.

72.     In the alternative, Defendants have breached and have caused and are liable for damages to GSI under the Franchise Agreement and the Guaranty, in an amount to be ascertained at trial.

73.     Defendants are contractually obligated to pay all costs and expenses, including reasonable attorneys' fees, incurred by GSI in enforcing the Franchise Agreement, the Guaranty and the Conditional Reinstatement, and any other agreements with Defendants.

## COUNT V

## BREACH OF CONTRACT
### (Against All Defendants)

74.     GSI incorporates the allegations contained in the preceding paragraphs as if fully set forth in this paragraph.

75.     Defendants' conduct as described above breached the Franchise Agreement, the Guaranty, the Conditional Reinstatement and the Listing Agreement.

76.     By way of non-exhaustive example, Defendants breached the Franchise Agreement and Guaranty, by among other things:

a.      authorizing, permitting and otherwise allowing The Gem School to use, have access to, obtain and/or otherwise benefit from the Marks, the confidential operating system, the Manual, and the School's goodwill and other confidential information all without authorization or approval, which violated Paragraphs 7.B and C and Paragraphs 8, 9 and 12 of the Franchise Agreement and the Guaranty;

b.      engaging in conduct that, in GSI's judgment, had or may affect the goodwill of the Marks, *see* Franchise Agreement (Ex. 1), ¶¶ 13.A(3) and the Guaranty;

c.      purporting to transfer rights or obligations under the Franchise Agreement to any third party without GSI's prior written consent, contrary to the terms of Paragraph 12 of the Franchise Agreement, *see* Franchise Agreement (Ex. 1), ¶¶ 12 and 13.A(4) and the Guaranty;

d.      failing to comply with the in-term covenants contained in Paragraph 16.B and the post-term covenants contained in Paragraph 16.C of the Franchise Agreement, *see* Franchise Agreement (Ex. 1), ¶¶ 13.A(5) and the Guaranty;

e.      failing to comply with the post-term covenants of the Conditional Reinstatement (Ex. 7) ¶ 10;

f.      abandoning the School and otherwise failing to continue to operate the School in accordance with the Franchise Agreement, the Guaranty, the Conditional Reinstatement and Listing Agreement.

77.      By way of non-exhaustive example, Defendants breached the Listing Agreement, the Conditional Reinstatement, and the covenants contained therein by, among other things, upon information and belief transferring, selling or otherwise disposing of the School or its assets to The Gem School without obtaining GSI's approval of the terms of the transfer and the buyer, as well as closing the School without conditioning that any new operator would operate the School

only as a The Goddard School® preschool under a franchise agreement with GSI following the closing on the sale, or other unauthorized transfer of the business.

78.     As a direct result of Defendants' conduct, GSI has suffered irreparable harm and damages to its business interests.

79.     For all these same reasons, and in the alternative, Defendants have breached and have caused and are liable for damages to GSI under the Franchise Agreement, the Guaranty, the Conditional Reinstatement and the Listing Agreement in an amount to be ascertained at trial.

## COUNT VI

### BREACH OF CONTRACT – LOST FUTURE ROYALTIES
(Against All Defendants)

80.     GSI incorporates the allegations contained in the preceding paragraphs as if fully set forth in this paragraph.

81.     Defendants' failures to comply with the terms of the Franchise Agreement, the Guaranty, the Listing Agreement and Conditional Reinstatement as set forth above constituted a material breach of the Franchise Agreement, the Guaranty, the Listing Agreement and Conditional Reinstatement.

82.     Defendants have deprived GSI of its anticipated royalty revenues by prematurely and wrongfully acting as set forth above, all in furtherance of the Scheme.

83.     As a result of such breaches and failures to perform, and for the reasons set forth above, Defendants in effect prematurely and wrongfully terminated the Franchise Agreement and forced GSI to issue the First and Second Termination Notices of the Franchise Agreement.

84.     Under the terms of the Franchise Agreement, the Guaranty, the Conditional Reinstatement and the Listing Agreement, GSI had anticipated receiving continuing revenue from

Defendants' or, pursuant to the Listing Agreement, a third-party's royalty payments for at least the fifteen (15) year term of the Franchise Agreement, until July 10, 2022.

85. Defendants' breach of the Franchise Agreement, the Guaranty, Conditional Reinstatement and the Listing Agreement has damaged GSI because, among other things, GSI no longer has the ability or potential to receive future royalties and payments as expected for the approximately five (5) years remaining under the term of the Franchise Agreement.

86. For all these reasons, Defendants have breached and have caused and are liable for damages to GSI under the Franchise Agreement, the Guaranty, the Conditional Reinstatement and the Listing Agreement, in an amount to be ascertained at trial.

## COUNT VII

## BREACH OF CONTRACT – COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Defendants)

87. GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

88. Defendants' conduct as set forth above deprives GSI of the benefit of its bargain under the Franchise Agreement, Conditional Reinstatement, Guaranty and the Listing Agreement.

89. Defendants' actions in furtherance of the Scheme and operation as set forth above will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees. The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

90. GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships and lost profits cannot be compensated in monetary damages.

91.     For all these same reasons, and in the alternative, GSI has suffered and will continue to suffer damages as a result of Defendants' breach of the covenant of good faith and fair dealing, in an amount to be determined at trial.

## COUNT VIII

## MISAPPROPRIATION OF TRADE SECRETS
**(Against All Defendants)**

92.     GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

93.     Defendants' conduct as set forth above constitutes a misappropriation of GSI's trade secrets within the meaning of the Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301, *et seq.* ("UTSA").

94.     The Goddard System derives economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  The Goddard System is the subject of reasonable efforts to maintain its secrecy.

95.     Defendants' operation as set forth above will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees.  The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

96.     GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships and lost profits cannot be compensated in monetary damages.

97. GSI has suffered and will continue to suffer damages as a result of Defendants' misappropriation of GSI's trade secrets, in an amount to be determined at trial.

98. Defendants' misappropriation of GSI's trade secrets is willful and malicious within the meaning of the UTSA.

## COUNT IX

### (SPECIFIC PERFORMANCE)
### (Against Defendants)

99. GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

100. Under the Franchise Agreement and Conditional Reinstatement, GSI had the right and, pursuant to the Second Notice of Termination, GSI provided notice to Defendants of GSI's exercise of its option pursuant to paragraph 15 of the Franchise Agreement to purchase all the assets of the School to GSI at their fair market value, exclusive of any goodwill and requested a list of assets in order to effectuate such a purchase and the closing.

101. Through the date of this Complaint, no list has been forthcoming and the purchase and closing on GSI's exercise of its option remains pending.

102. GSI requests that the Court enter an order of specific performance requiring Defendants, jointly and severally, to sell all the assets of the School to GSI at their fair market value, exclusive of any goodwill within sixty (60) days from Defendants' receipt of GSI's notice to exercise its option pursuant to paragraph 15 of the Franchise Agreement or sixty (60) days from Defendants' delivery of a list of assets to GSI, whichever is later.

**WHEREFORE**, Plaintiff Goddard Systems, Inc. requests the following relief:

a. Declaratory judgment that the involvement of Defendants in the competing The Gem School (the "Competing School") violated the In-Term Covenant under the Franchise Agreement;

b. Declaratory judgment that the involvement of Defendants in the Competing School violated and continues to violate the Post-Term Covenant under the Franchise Agreement;

c. Declaratory judgment that Defendants' complained of conduct and the involvement of Defendants in the Competing School violates the Covenant of Confidentiality under the Franchise Agreement;

d. Declaratory judgment that any purported assignment or transfer (including, without limitation, any sale, assignment, transfer, conveyance, gift or give away, pledge, mortgage or other encumbrance) by any of Defendants in the franchise (including any interest in any partnership, corporation or limited liability company that owns the franchise) or in the assets of the franchise not having GSI's written consent is null and void;

e. Declaratory judgment that Defendants' complained of conduct and the involvement of Defendants in the Competing School, constitutes willful and malicious misappropriation of GSI's trade secrets in violation of the Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301 *et seq.*;

f. A preliminary and permanent injunction enjoining Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with any of them (including, without limitation, The Gem School and its proprietors, incorporators, officers, directors, agents and members), either directly

or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from using, in connection with a non-Goddard School business, by advertising or in any manner whatsoever, any equipment, confidential methods, procedures and techniques associated with the Goddard School business system; the trade and service marks "THE GODDARD SCHOOL®" and any other GSI trade name, trademark, service mark, or distinctive form, slogan, sign, symbol or device associated with the Goddard School business system including all signs, equipment, advertising materials, stationery, forms and any other articles which display GSI's trademarks, trade names or service marks;

g.     A preliminary and permanent injunction, enjoining Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with any of them (including, without limitation, The Gem School and its proprietors, incorporators, officers, directors, agents and members), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from holding themselves out as present or former GSI franchisees;

h.     A preliminary and permanent injunction enjoining Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with either of them (including, without limitation, The Gem School and its proprietors, incorporators, officers, directors, agents and members), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from owning, maintaining, engaging in, being employed by, financing, or having any interest in the Competing

School or any other child daycare or preschool learning center at the School located at 100 Patriot Drive, Middletown, Delaware 19709, during the remaining three-year term of the post-term covenants set forth in the Franchise Agreement or for a period of three years following the date on which Defendants ceased to operate or have any other prohibited involvement or interest in the Competing School, whichever is later;

i.     A preliminary and permanent injunction enjoining Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with any of them (including, without limitation, The Gem School and its proprietors, incorporators, officers, directors, agents and members), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, for the three-year period following the termination of the Franchise Agreement and Guaranty, including the Conditional Reinstatement, or the date which or the date on which Defendants cease to operate or have any other prohibited involvement or interest in the Competing School, whichever is later, from diverting or attempting to divert any business or customer of their former Goddard School to any competitor by direct or indirect inducement or otherwise, or from doing or performing, either directly or indirectly, any other act injurious or prejudicial to the goodwill associated with GSI's trademarks, trade names, service marks or the Goddard School business system;

j.     A preliminary and permanent injunction enjoining Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation

with any of them (including, without limitation, The Gem School and its proprietors, incorporators, officers, directors, agents and members), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, for the three-year period following the termination of the Franchise Agreement, including the Conditional Reinstatement, or the date on which Defendants cease to operate or have any other prohibited involvement or interest in the Competing School, whichever is later, from employing or seeking to employ any person who is at that time employed by GSI or by any GSI franchisee, or otherwise directly or indirectly inducing such person to leave his employment with GSI or such GSI franchisee;

k. A preliminary and permanent injunction enjoining Defendant, their agents, servants, employees and attorneys, and all others in active concert or participation with either of them (including, without limitation, The Gem School and its proprietors, incorporators, officers, directors, agents and members), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from communicating, divulging, or using for the benefit of any person, persons, partnership, association or corporation, any trade secrets or confidential information, knowledge or know-how communicated or disclosed to them by GSI;

l. An order requiring Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with any of them (including, without limitation, The Gem School and its proprietors, incorporators, officers, directors, agents and members), either directly or indirectly, for themselves, or through, on

behalf of, or in conjunction with any other person, persons, partnership or corporation, to turn over to GSI all manuals, including the Goddard School Confidential Operating Manual, records, files, instructions, correspondence, proprietary software, all materials related to the Franchisees' operation of their former Goddard School including all brochures and agreements, and any and all other materials and any other documents (including those in any electronic format) that relate to the operation of their former Goddard School or otherwise embody or reflect any part of the System or GSI's trade secrets or confidential and proprietary information;

m.      Entry of an order of specific performance requiring Defendants, jointly and severally, to sell all the assets of the former Goddard School to GSI at their fair market value, exclusive of any goodwill;

n.      Money damages attributable to Defendants' misappropriation of GSI's trade secrets, multiplied as provided in 12 Pa. C.S.A. § 5304(b);

o.      Money damages attributable to Defendants' breaches of the Franchise Agreement and Guaranty, including the Conditional Reinstatement, and the Listing Agreement;

p.      Compensatory damages awarded in favor of GSI and against all Defendants;

q.      Lost profits awarded in favor of GSI and against all Defendants;

r.      Exemplary damages awarded in favor of GSI and against all Defendants;

s.      Punitive damages awarded in favor of GSI and against all Defendants;

t.      Treble damages under 15 U.S.C. § 1117;

u.      An accounting by Defendants of the profits to which GSI may be entitled;

v.  Attorneys' fees, costs, expert fees and investigative fees incurred in connection with

this action as allowed by 15 U.S.C. § 1117(a) and any other applicable statutory,

contractual or common law provision;

x.  Pre-judgment and post-judgment interest; and

y.  Such other relief as this Court may deem just and proper.

Respectfully submitted,

**GODDARD SYSTEMS, INC.**

Dated: May 3, 2017            By: _Constantine T Fournaris_
                                  Constantine T. Fournaris
                                  Richard M. Gallucci, Jr.
                                  WIGGIN AND DANA LLP
                                  Two Liberty Place
                                  50 S. 16th Street, 29th Floor
                                  Philadelphia, PA 19102
                                  215-988-8311
                                  cfournaris@wiggin.com
                                  *Attorneys for Plaintiff Goddard Systems, Inc.*